Duffy *v.* Kelly.

WILLIAM DUFFY

*v.*

JOHN KELLY and THE BAVARIAN BREWING COMPANY.

A lease provided that the tenant should have the option of extending the same for another term, "unless the landlord shall pay a fair price for the building," to be erected by the tenant, provided three months' notice be given by either party before the expiration of the lease.—*Held*, that a suit by the landlord, who had elected to purchase the building and had given the required notice, to enforce such provision, was in effect a suit for specific performance, which equity, after fixing the fair value of the property, would enforce.

The suit is in the nature of one for specific performance. The complainant, by his bill, sets out that he is the owner of a lot of land in Hoboken, known as No. 165 Newark street, and that on the 2d of October, 1891, he demised the same unto one Adolph Horn, for the term of five years from that day, and the lease contained a clause in these words:

"And it is further agreed that the tenant shall have the option of extending this lease for the further period of five years for the same rent, unless the landlord shall pay a fair price for the building that is to be put on the premises by the tenant, provided three months' notice in writing is given by either party before the expiration of this lease."

The bill further sets out that a building was erected on the premises by Horn, who occupied the same, and, in the year 1894, assigned the leasehold interest to the defendant John Kelly, who took possession and has occupied as assignee; that subsequently Kelly executed a chattel mortgage on the premises to the defendant the Bavarian Star Brewing Company, to secure

$700; that on the 30th of June, 1896, and more than three months before the end of the term created by the lease in question, the complainant gave written notice to Horn and Kelly that he had elected that the lease should not be extended for the further term of five years; but that the same should terminate and come to an end on the 2d day of October then next, and that the complainant was willing to pay a fair price for the building erected thereon by Horn, and that Kelly was notified to quit and surrender the premises at the end of the term.

The bill further alleges that a fair price of the building was $250, and that complainant tendered that amount to Kelly, but that Kelly refused to accept it. Complainant tenders himself ready and willing to pay to Kelly, or to the mortgagee, as the court may decree, such sum as the court shall deem a fair price for the building, and he alleges that he cannot safely pay to either without the consent of the other, except by the direction of this court.

The defendants have answered separately. Kelly admits the material allegations of the bill, except the cost of the building and the value of the property. He alleges that the building originally cost $1,000, and that it is worth that now. He admits the mortgage, and that the full amount of $700 is due upon it. Finally, he takes the point in his answer that this court has no jurisdiction, and that the complainant has full remedy at law.

The answer of the brewing company admits simply that it had notice of the clause of renewal in the lease; sets up that the whole amount is due, with interest, on the mortgage, and prays such relief as the court may deem equitable and just.

There is no allegation in the pleadings that Kelly ever gave complainant notice, as required by the lease, that he elected to renew the term for five years, and no evidence of any such notice was produced.

Evidence was gone into as to the value of the building. The witnesses for the complainant placed it at about $250, or a little more, and those for the defendant placed it at upwards of $600. Horn, the lessee, called by complainant, stated the original cost of the building, with sewer and water connections, to have been

Duffy *v.* Kelly.

$611. A witness for defendant went into a detailed statement of its present value, and fixed it at $635, that being the amount it would cost to replace it.

*Mr. Gilbert Collins*, for the complainant.

*Mr. Henry Puster*, for the defendants.

PITNEY, V. C.

First, with regard to the jurisdiction of the court.

The clause in question is, in effect, a contract on the part of the lessee to convey the building to the complainant, lessor, at his option, at a fair price. This is a necessary implication from the scope and purpose of the contract. If the building was, in fact, so annexed to the land as to be incapable of removal as a trade fixture, then the legal title was in the lessor and no actual conveyance is necessary. If, on the other hand, the lessee has the right to remove it, a formal release of that right is proper. The clause was evidently framed upon the idea that it was not removable, and the provision for compensation was manifestly introduced for the benefit of the lessee by way of protecting him against the loss of the amount invested in the building. It follows that the suit is, in effect, one for specific performance.

The circumstance that the interest here in question may be properly classed as a chattel interest is no objection to the jurisdiction of the court. The power and propriety of the court, in proper cases, to deal with specific performance of contracts for the sale of chattels is established by a series of authorities in New Jersey, the leader being *Cutting* v. *Dana, 10 C. E. Gr. 265*, followed by *Rothholz* v. *Schwartz, 1 Dick. Ch. Rep. 477*, and by the later case of *Gannon* v. *Toole, 32 Atl. Rep. 702.* In the last case, the interest dealt with was much like that now before the court.

But, in essence, the subject-matter here is real estate. It involves the right to the possession of the land itself, as well as of the building which has been erected upon it.

Then I am unable to see how the complainant can have his remedy at law. By his notice given to Kelly, he bound himself to purchase the building at a fair price, and barred himself from declaring the term ended except upon terms of paying for the building. In order to maintain an action at law, it is necessary for him to make a tender of a fair price in advance of his action. And there are two difficulties in the way of that—first, that he has no mode of ascertaining in advance what a jury will consider to be a fair price, and second, he might not be quite safe in tendering it to either of the two—Kelly, the assignee of the lease, or to the Bavarian Brewing Company, as mortgagee.

The real position of the complainant is that of a person holding a contract to purchase a right of possession of land upon paying a fair price for a building situate upon it. In that respect the case is the converse of *Berry* v. *Van Winkle, 1 Gr. Ch. 269*, where the aid of the court was asked by the lessee, who had a contract from the lessor to pay him, at the end of the term, the value of improvements to be put upon the premises.

Viewed in the light of a suit for specific performance, the power and duty of the court, where, as here, it is necessary, in order to do justice, to ascertain the fair value of the subject of the sale, must be considered as settled in this court. The subject was considered by Chancellor Green in *Van Doren* v. *Robinson, 1 C. E. Gr. 256* (at *p. 260*), where that learned judge collected the authorities and stated the result thus : " But where the contract is that the land shall be reconveyed, not at a price to be agreed upon by the parties, but at a fair price, or at a fair valuation, the court would direct the valuation to be made by a master, and will enforce the execution of the contract."

It is manifest that, unless the court will undertake to ascertain the fair value of the building, the complainant will be in great danger of losing the benefit of the terms of his contract, and that consideration has influenced the courts in the direction of assuming that duty whenever practicable. This abundantly appears from an examination of the later English authorities. *Pom. Spec. Perf. § 151; Fry Spec. Perf. (3d Am. ed.) § 346;*

*Hopcraft* v. *Hickman, 2 Sim. & S. 130;  Gaskarth* v. *Lord Lowther, 12 Ves. 107;  Jackson* v. *Jackson, 1 Sm. & G. 184; 22 L. J. Ch. (N. S.) 873;  Milnes* v. *Gery, 14 Ves. 400.*

The latter was an action for specific performance of a contract to sell an estate at a price to be fixed by two indifferent persons, one to be named by one party and the other by the other party, and if the persons so named should happen to disagree, then these two to choose a third person, whose determination should be final.    Two persons were chosen, but were unable to agree, and were unable to agree upon a third person.    Complainant filed a bill for specific performance, asking the court to appoint a proper person to make the valuation, or that the valuation should be ascertained in such other manner as the court should direct.    Sir William Grant, master of the rolls, held that the court had no power to fix the price in any other manner except in that mode fixed by the parties, but at page 407 he adds: "The case of an agreement to sell at a fair valuation is essentially different.    In that case no particular means of ascertaining the value were pointed out.    There is nothing, therefore, precluding the court from adopting any means adapted to that purpose."

With regard to the value of the building here in question, I think a fair valuation will be arrived at by taking the actual cost of the building and water and sewer connection, which was $611, and make a moderate allowance for five years' wear and tear.    This I fix at $61 and fix the valuation at $550.

As the complainant made his offer too small and the defendant his demand too large, I think it right that each party should pay his own costs.

The decree will be that, upon tender of that sum, the defendant must release all right, title and interest in the premises, without prejudice to the right of the complainant to recover for use and occupation.